[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14032

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 13, 2012
JOHN LEY
CLERK

D. C. Docket No. 09-14019-CV-KMM

STEPHEN G. LOFTUS,
DYLAN LOFTUS,
Minor by and through Stephen
G. Loftus, the natural father,
guardian and next of friend,
SAVONNA LOFTUS,
Minor by and through Stephen
G. Loftus, the natural father,
guardian and next of friend,

Plaintiffs-Appellants,

versus

ESTER CLARK-MOORE,
MYRA FERGUSON,

Defendants-Appellees,

UNITED FOR FAMILIES, INC.,
FAMILY PRESERVATION SERVICES OF FLORIDA, INC.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 13, 2012)

Before PRYOR, and FAY, Circuit Judges, and QUIST,[*] District Judge.

PRYOR, Circuit Judge:

This appeal of a grant of qualified immunity concerns whether two social workers violated clearly established federal rights, during an investigation of alleged child abuse, by interviewing a minor without her father's consent and by threatening to remove the minor and a sibling from the father's care. After Stephen Loftus petitioned a Florida court to help him protect his two children from his allegedly abusive former wife, a social worker, Ester Clark-Moore, investigated the safety and welfare of Loftus's children, Savonna and Dylan. In the course of her investigation, Clark-Moore allegedly interviewed Savonna without Loftus's consent, and Clark-Moore's supervisor, Myra Ferguson, allegedly twice threatened to remove both children from Loftus's care. Loftus filed a civil complaint that the social workers had violated Savonna's right to be free from unreasonable seizures and the family's right to be free from governmental interference. 42 U.S.C. §

_____

[*]Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

2

1983.  Because neither social worker violated any clearly established federal civil rights in the investigation that Loftus had invited, we affirm the dismissal of Loftus's complaint against them.

## I. BACKGROUND

On September 10, 2008, Stephan Loftus filed a petition for dependency in a Florida court to protect his minor children, Dylan and Savonna, from abuse allegedly inflicted by their mother.  In that petition, Loftus asserted that he could not protect his children "without [state] intervention."  A divorce decree had awarded Loftus full custody of the children and had provided his former wife "restricted, supervised visitation" rights.

In response to Loftus's petition, Family Preservation Services of Florida, Inc., which contracts with the Florida Department of Children and Families, commenced an investigation and sent a social worker, Ester Clark-Moore, to visit the Loftus home.  Although he had invited the investigation of his children's welfare, Loftus told Clark-Moore that "he did not want anyone talking with his children without his knowledge or permission because the children had suffered extreme emotional stress and damage due to the contentious divorce." Nevertheless, Clark-Moore visited Savonna at her school without notifying Loftus. According to Loftus, Clark-Moore "brutally interrogated" Savonna in a "private

3

room."

When Loftus complained to Clark-Moore's supervisor, Myra Ferguson, about Clark-Moore's interrogation of Savonna, Ferguson allegedly "threatened [Loftus] with the removal of the children from his care and control." Ferguson called Loftus twice in mid-November. In the first telephone call, Ferguson allegedly told Loftus that "they were coming that day to take custody of the two minor children," and in the second call, Ferguson allegedly told Loftus "to take the children to the police station so that they could take custody of the children." But Loftus does not allege that Ferguson otherwise acted on her threats. During this period, Loftus retained custody of his children.

Loftus filed a complaint in the district court that Clark-Moore and Ferguson had violated his and his children's right to due process under the Fourteenth Amendment, and Savonna's rights under the Fourth Amendment. Loftus alleged that Clark-Moore and Ferguson "intended to harass and intimidate Loftus by frequent, unnecessary home visits, interrogation of Loftus and the children and threats to remove the children from his custody." Loftus later amended his complaint to allege that Family Preservation Services was liable for any damages because it had "failed and neglected to train" and adequately supervise Clark-Moore and Ferguson.

Clark-Moore, Ferguson, and Family Preservation Services moved to dismiss Loftus's complaint for failure to state a claim and on the ground that they were immune from suit. The district court ruled that Clark-Moore and Ferguson were entitled to qualified immunity because neither social worker had violated a clearly established federal right of Loftus or his children. The district court also ruled that Family Preservation Services, as a state actor, was entitled to sovereign immunity.

After he filed this appeal, Loftus was arrested and charged with four counts of lewd and lascivious molestation of Savonna. Loftus is currently under house arrest and may not come within 50 feet of Savonna or within 500 feet of her residence. Nor may Loftus contact either of his children.

In the light of the pending charges against Loftus, Clark-Moore and Ferguson moved to dismiss this appeal as moot and for lack of standing. In response to that motion, we stayed this appeal until resolution of the criminal charges against Loftus, and we asked the parties to file status reports. In February 2012, the parties filed a status report that we construed as a joint motion to lift the stay. The parties reported that a Florida court had awarded custody of Loftus's children to their mother. Although the criminal charges against Loftus are still pending, we granted the joint motion to lift the stay. We also denied the motion to dismiss for lack of standing and mootness.

This appeal is now ripe for adjudication.

## II. STANDARD OF REVIEW

"Our review of a district court's denial of a motion for summary judgment based on qualified immunity is <u>de novo</u>." <u>Terrell v. Smith</u>, 668 F.3d 1244, 1249–50 (11th Cir. 2012). "[W]e must view all evidence and make any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. However, we draw these inferences only to the extent supportable by the record." <u>Penley v. Eslinger</u>, 605 F.3d 843, 848 (11th Cir. 2010) (internal citation and quotation marks omitted). "[T]he requirement to view the facts in the nonmoving party's favor extends to genuine disputes over material facts and not where all that exists is 'some metaphysical doubt as to the material facts.'" <u>Id.</u> (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).

## III. DISCUSSION

Loftus argues that Moore and Ferguson are not entitled to qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Sherrod v. Johnson</u>, 667 F.3d 1359, 1363 (11th Cir.

6

2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). After the "public official . . . prove[s] that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred," Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted), "the burden shifts to the plaintiffs to show that qualified immunity is inappropriate," Terrell, 668 F.3d at 1250. Because it is undisputed that Clark-Moore and Ferguson acted within the scope of their discretionary authority when they communicated with Loftus and his children, Loftus has the burden to "allege facts that establish that [Clark-Moore and Ferguson] violated [the] constitutional rights[] [of Loftus and his children] and . . . show that the right[s] involved [were] 'clearly established' at the time of the putative misconduct." Id. We are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

Because Loftus's complaint is one "in which it is plain that a constitutional right [was] not clearly established," id. at 237, 129 S. Ct. at 818, our analysis begins and ends with the second inquiry of the test for qualified immunity. The inquiry whether a federal right is clearly established "must be undertaken in light

7

of the specific context of the case, not as a broad general proposition." Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation he confronted." Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (internal quotation marks omitted). "To answer this question, we look to law as decided by the Supreme Court, the Eleventh Circuit, or the Supreme Court of [Florida]." Barnes v. Zaccari, 669 F.3d 1295, 1307 (11th Cir. 2012).

To prosecute his complaint that Clark-Moore and Ferguson violated a federal civil right, Loftus must "demonstrate that the contours of the right were clearly established in [one of three] ways." Terrell, 668 F.3d at 1255. First, Loftus "may show that a materially similar case has already been decided." Id. (internal quotation marks omitted). "This category consists of cases where judicial precedents are tied to particularized facts." Id. at 1256 (internal quotation marks omitted). To assess "whether previous cases clearly establish the law under the materially similar inquiry, we ask whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case." Id. (internal quotation marks omitted). Second, Loftus may

8

"point to a broader, clearly established principle [that] should control the novel facts [of the] situation." Id. at 1255 (internal quotation marks omitted) (alteration in the original). "[T]he principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Id. at 1256 (internal quotation marks omitted). In other words, "in the light of pre-existing law the unlawfulness must be apparent." Id. (internal quotation marks omitted). Third, "the conduct involved in the case may so obviously violate[] th[e] constitution that prior case law is unnecessary." Id. at 1255 (internal quotation marks omitted) (alteration in the original). This "narrow" category encompasses those situations where "the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." Id. at 1257 (internal quotation marks omitted).

Our discussion of Loftus's appeal is divided in two parts. First, we explain why Clark-Moore's interrogation of Savonna did not violate a clearly established federal right. Second, we explain why Ferguson's alleged threat to remove Loftus's children did not violate a clearly established federal right.

*A. Clark-Moore's Interrogation of Savonna Did Not Violate a Clearly Established Federal Right.*

Loftus alleged in his complaint that Clark-Moore violated Savonna's right to be free from unreasonable searches and seizures, U.S. Const. Amend. IV, when Clark-Moore "brutally interrogated" Savonna in "a private room" at her school without Loftus's permission, a warrant, probable cause, or exigent circumstances. The district court ruled that it could not hold "as a matter of law . . . that there are no circumstances consistent with the facts as pled that constitute an unreasonable seizure in violation of the Fourth Amendment," but we need not express an opinion about that issue. Clark-Moore is entitled to qualified immunity on the ground that she did not violate any clearly established right protected by the Fourth Amendment when she interrogated Savonna as part of an investigation of the child's welfare that Loftus had invited.

Loftus cites no decision of the Supreme Court, our Court, or the Florida Supreme Court that would have provided Clark-Moore notice that her conduct violated Savonna's rights under the Fourth Amendment, <u>Barnes</u>, 669 F.3d at 1307, and Loftus fails to explain how Clark-Moore's conduct otherwise obviously violated the Constitution, <u>Terrell</u>, 668 F.3d at 1257.

"[S]tate officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of 'clearly established

10

law,'" Foy v. Holston, 94 F.3d 1528, 1537 (11th Cir. 1996), so it should come as no surprise that no controlling case law establishes that it is unreasonable for a Florida social worker to interrogate a minor at her school during the course of an investigation of allegations of child abuse. Similarly, no controlling case law requires a showing of probable cause for a Florida social worker to interrogate a minor on school grounds if the minor is suspected of being a victim of child abuse. We have stated instead that a state official may seize a student at a school so long as the seizure is "justified at its inception" and is "reasonably related in scope to the circumstances which justified interference in the first place." Gray v. Bostic, 458 F.3d 1295, 1304 (11th Cir. 2006) (internal quotation marks omitted). Although Gray involved a police officer who worked at public school officials' behest to ensure the safety of the other students at that school, we have never limited the standard for evaluating the reasonableness of a seizure of a minor at a school.

Loftus cites a decision from one of our sister circuits, Doe v. Heck, 327 F.3d 492 (7th Cir. 2003), to support his argument, but that decision cannot provide "clearly established" law in this Circuit. Loftus insists that the "notice of illegality . . . should not have to come from cases in the district where the improper incident occurred," but Clark-Moore, as a Florida official performing a discretionary duty,

11

"cannot be held to a standard of conduct which is unsettled by the Supreme Court[,] . . . this circuit[,]" or "the highest state court" in Florida. Courson v. McMillian, 939 F.2d 1479, 1498 & n.32 (11th Cir. 1991); D'Aguanno v. Gallagher, 50 F.3d 877, 881 n.6 (11th Cir. 1995).

Loftus argues too that the warrantless seizure of Savonna violated Florida law, which should have put Clark-Moore on notice that her actions were illegal, **[Blue Brief at 26]** but this argument fails because "section 1983 protects only against violations of federally protected rights." Casines v. Murchek, 766 F.2d 1494, 1501 n.10 (11th Cir. 1985). "[T]he violation of a state statute mandating procedure is not the equivalent of a federal Constitutional violation." First Assembly of God of Naples, Fla., Inc. v. Collier Cnty., Fla., 20 F.3d 419, 422 (11th Cir. 1994). "We have stressed in our own cases that Section 1983 must not be used as a font of tort law to convert state tort claims into federal causes of action." Peterson v. Baker, 504 F.3d 1331, 1336 (11th Cir. 2007) (internal quotation marks omitted).

*B. Ferguson's Threats to Remove the Children from Loftus's Care Did Not Violate A Clearly Established Federal Right.*

Loftus also alleged that Ferguson's threats to take away his children violated his and his children's clearly established right to be free from "governmental intrusion into family privacy," as protected by the due process clause of the

12

Fourteenth Amendment. The district court ruled that Ferguson's "threats to remove [the Loftus] children from [Loftus's] home, absent a reasonable belief that the child[ren] [had] been abused or that the child[ren] [were] in imminent danger . . . constitute[d] a substantive due process violation of the Loftus family's right to familial relations," but we need not reach that issue. Ferguson is entitled to qualified immunity because the threats that she allegedly made did not violate any clearly established federal right.

No controlling case law establishes that a social worker violates a parent's right to due process by making threats to remove his children in the course of an investigation of child abuse that the parent invited, and Loftus fails to explain how Ferguson's conduct otherwise obviously violated the Constitution. Loftus cites no decision of our Court, the Supreme Court, or the Florida Supreme Court to support his argument that Ferguson's conduct violated his and his children's clearly established constitutional rights. See Barnes, 669 F.3d at 1307. "If anything, an examination of our cases largely establishes the opposite conclusion from the one that [Loftus] urge[s] us to draw." Terrell, 668 F.3d at 1256.

We have stated that "[f]amily relationships are an area of state concern, and the state has a compelling interest in removing children who may be abused." Foy, 94 F.3d at 1536. Indeed, we have recognized that "the right to family integrity

13

clearly does not include a constitutional right to be free from child abuse investigations." Id. at 1536–37. For that reason, "it is no surprise that state officials who investigate allegations of child abuse and in so doing disrupt a family have been entitled to qualified immunity." Id. at 1537.

Foy v. Holston is instructive. In that decision, parents complained that the Alabama Department of Human Resources had violated a right to "preserve their family unit" when it had detained a minor who had alleged that her parents had abused her. Id. at 1536. We held that an investigation by social workers into the welfare of a child did not violate any clearly established right to family privacy. Id. at 1537. Unlike the parents in Foy, Loftus was not suspected of abuse when Ferguson's threats occurred, but this distinction does not mean that Loftus enjoyed a clearly established right to be free from a state social worker's mere threats. We have never held that conduct similar to Ferguson's violates a right to substantive due process.

Loftus relies on three decisions from other circuits, Doe, Croft v. Westmoreland County Children & Youth Services, 103 F.3d 1123 (3d Cir. 1997), and Miller v. City of Philadelphia, 174 F.3d 368 (3d Cir. 1999), to support his argument that Ferguson's threats violated his and his children's clearly established "rights to familial relations," but decisions outside our circuit cannot guide our

14

interpretation of what is "clearly established" federal law in this Circuit. Fair notice to Ferguson must instead be provided by a decision of the Supreme Court, this Court, or the Florida Supreme Court. See Barnes, 669 F.3d at 1307.

Loftus argues that, because he asked Florida to intervene, he should have been able to control the extent of its intervention, but Loftus's request that Florida investigate allegations of child abuse buttresses the conclusion that Ferguson did not violate Loftus's clearly established rights to "familial relations." Ferguson acted in response to Loftus's petition, and "[w]hen public officials do their jobs, it is a good thing." Foy, 94 F.3d at 1534. "[O]fficials should not err always on the side of caution." Davis v. Scherer, 468 U.S. 183, 196, 104 S. Ct. 3012, 3020 (1984). Although Ferguson allegedly threatened Loftus, Ferguson did not separate Loftus from his children or otherwise interfere with his parental rights. Loftus's complaint fails to allege that Ferguson violated a clearly established federal right.

## IV. CONCLUSION

We **AFFIRM** the dismissal of Loftus's complaint against Clark-Moore and Ferguson.

**AFFIRMED.**