[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15796
_____

D.C. Docket No. 3:13-cv-00008-MCR-EMT


RONALD JAY,
as guardians of their son,
ELEANOR KYLE MONELL,
as guardians of their son,
DANIEL JACOB MONELL,

                                                            Plaintiffs-Appellees,

versus


JOSHUA KEN HENDERSHOTT,
Deputy #374,

                                                            Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 17, 2014)

Before ED CARNES, Chief Judge, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Defendant Joshua Hendershott appeals the district court's denial of his motion to dismiss on qualified-immunity grounds. At issue before us is whether, based upon the facts alleged in the complaint, Hendershott's use of a police canine to effectuate an arrest of Daniel Jacob Monell constituted excessive force under clearly established law. Because we conclude that Monell and his parents have not alleged the violation of a right that was clearly established at the time of the arrest, we reverse the district court's order.

## I.

On January 8, 2009, at approximately 10:30 p.m., an off-duty Panama City police officer spotted Plaintiff Daniel Jacob Monell stopped in his vehicle in the middle of the Blue Angel Parkway in Escambia County, Florida.[1] The officer approached Monell and attempted to communicate with him to see if Monell required any assistance. When Monell failed to respond to the officer's inquiries, the officer notified the Escambia County Sheriff's Office that a vehicle was parked on the highway and that the driver was uncommunicative.

---

[1] These facts are drawn from the Second Amended Complaint and are deemed to be true for purposes of this appeal. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1229, 1231 (11th Cir. 2000) (per curiam).

Shortly thereafter, Defendant Joshua Hendershott and another officer responded to the scene.  Upon their arrival, Monell started his car and began to drive away slowly.  The officers followed Monell and activated their emergency lights and sirens to have him pull over.  Monell ignored the officers' commands to stop his vehicle and continued to drive away at approximately 15 to 20 miles per hour, well below the posted speed limit.  Monell did not drive erratically and committed no other violations other than failing to pull over.

Hendershott and the other officer with him notified dispatch that they were in pursuit of a driver who was operating his vehicle in an impaired manner. Following this, at least ten to fifteen officers responded to the area, including some in a police helicopter.    The officers then "engaged in high-speed driving from intersection to intersection blocking each intersection as Monell drove by."  After running Monell's vehicle-registration information, the officers discovered that Monell was driving towards his residence.

As Monell approached his residence, Hendershott began to "agitate and stimulate" his police canine to prepare the dog to subdue Monell.  Monell, who remained unresponsive to the officers' directives, opened his garage door from within his vehicle, got out of the car, and walked towards the garage.  Although he displayed no outward hostility or violent behavior towards any of the officers, Monell completely ignored the officers' presence and again failed to heed their

3

warnings to stop.  As Monell walked towards the open garage and away from police, Hendershott directed the canine to apprehend Monell, who sustained "serious injuries" as a result.[2]

## II.

Monell's parents and legal guardians, Ronald Jay and Eleanor Kyle Monell, filed a civil-rights suit on Monell's behalf stemming from Monell's arrest, claiming, among other things, that the deployment of the police canine constituted excessive force in violation of Monell's Fourth Amendment rights.   Hendershott moved to dismiss the Second Amended Complaint on the basis of qualified immunity.  The district court denied Hendershott's motion, concluding that the use of the canine was objectively unreasonable and disproportionate to the need for force and that clearly established law at the time of the incident would have informed a reasonable officer that such force was excessive.  Because we disagree that the law on this issue was clearly established, we reverse the district court's denial of qualified immunity.

## III.

---

[2] Monell was subsequently arrested and prosecuted in state court for a felony but was found not guilty by reason of insanity.  Monell, who has a long history of emotional and psychiatric problems, was declared incompetent by the Escambia County Circuit Court on May 18, 2012.  His parents, Appellee-Plaintiffs here, were appointed his legal guardians.  Monell was living with his parents at the time of the incident.  Plaintiffs do not allege that Hendershott or any of the arresting officers had actual knowledge of Monell's history of mental illness.

The Court reviews *de novo* a district court's denial of a motion to dismiss on the basis of qualified immunity. *Flores v. Satz*, 137 F.3d 1275, 1277 (11th Cir. 1998) (per curiam). "A motion to dismiss a complaint on qualified immunity grounds will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). In ruling on a motion to dismiss, the Court accepts the non-conclusory factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

**IV.**

"Qualified immunity offers complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (per curiam)) (internal quotation marks omitted). To obtain qualified immunity, a defendant must establish that he was acting within the scope of his discretionary authority when the alleged violation occurred. *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).

5

Here, it is undisputed that Hendershott was acting within his discretionary authority when Monell was arrested, so the burden shifts to Plaintiffs to show that Hendershott committed a violation of Monell's constitutional right and that the right was "clearly established" at the time of the incident. *See Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010). In applying this two-part inquiry, we have discretion to address either prong first. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009). Here, because we conclude that Plaintiffs' Fourth Amendment claim is one "in which it is plain that a constitutional right [was] not clearly established," *id.* at 237, 129 S. Ct. at 818, we address only the second prong of the qualified-immunity analysis and do not reach the issue of whether the complaint sufficiently alleges a constitutional violation.

To determine whether a right was clearly established at the time of the alleged violation, the Court must consider "whether it would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (internal quotation marks omitted). This Circuit uses two methods to evaluate whether a reasonable officer would know that his conduct is unconstitutional.

The first method "looks at the relevant case law at the time of the violation; the right is clearly established if 'a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law.'"

*Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011) (alterations in original) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008)). While the facts need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011); *see also Gennusa v. Canova*, 748 F.3d 1103, 1113 (11th Cir. 2014) ("We do not always require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate." (internal quotation marks omitted)). In the context of excessive-force claims, we have previously noted that "generally no bright line exists for identifying when force is excessive." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). Therefore, "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Id.*

The second method "looks not at case law, but at the officer's conduct, and inquires whether that conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law.'" *Fils*, 647 F.3d at 1291 (alterations in original) (quoting *Vinyard*, 311 F.3d at 1355). Referred to as "obvious clarity," this method creates a narrow exception to the general rule requiring particularized case law to determine whether a right is clearly

established. *Id.* To fall within this exception, the officer's conduct must have been "so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point." *Priester*, 208 F.3d at 926 (alteration in original) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (per curiam)) (internal quotation marks omitted). Under this test, the Court must determine whether application of the excessive-force standard "would inevitably lead every reasonable officer in [the defendant's] position to conclude that the force was unlawful." *Id.* (internal quotation marks omitted).

The facts alleged in the Second Amended Complaint, even when viewed in the light most favorable to Plaintiffs, are insufficient to make the required showing under either method.

## A.

First, we agree with the district court that no case from the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court is "on all fours" with the facts alleged in this case. Nor have Plaintiffs identified—and we could not find—any case materially similar to this one. In this Circuit, at one end of the spectrum, we have previously held that the use of a police canine to subdue a suspect is objectively reasonable where the suspect is wanted for the commission of a serious crime, actively flees from police, resists arrest, and is reasonably believed to be

8

armed and dangerous. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (per curiam). By contrast, at the other end, we have held that such force, when employed against an individual who presents no safety risk and is fully compliant with officers' commands, is excessive under the Fourth Amendment. *See Priester*, 208 F.3d at 927. Here, however, we are faced with an individual who, though neither outwardly aggressive nor hostile, failed to comply with *any* instructions from law enforcement, was still actively evading police when the canine was released, and was approaching both an open garage with unknown items inside and a house with people inside. As we have never before addressed whether the deployment of a canine under these particular circumstances is unconstitutional, our case law is insufficient to put officers on notice as to whether the conduct alleged violates the Fourth Amendment.

In denying Hendershott qualified immunity, the district court relied primarily on our decision in *Priester*, concluding that clearly established law at the time of Monell's arrest would have informed a reasonable officer that the force allegedly employed was unconstitutional. We do not agree that *Priester*, which was decided on vastly different facts, compels this conclusion.

In *Priester*, law-enforcement officers used a police canine to track and apprehend a burglary suspect. 208 F.3d at 923. When the officers happened upon the plaintiff, the plaintiff raised his hands in submission and, without resistance,

9

complied with the officers' commands to lie down on the ground. *Id.* While the plaintiff was lying prostrate, cooperating with the officers, the officers gratuitously ordered the dog to attack him and allowed the dog to bite him for at least two minutes. *Id.* Under these circumstances—where the plaintiff submitted to police authority, did not attempt to flee or resist arrest, and posed no apparent threat to officer safety or to the safety of anyone else—we held that "no particularized preexisting case law was necessary for it to be clearly established that [the defendant] violated Plaintiff's constitutional right to be free from the excessive use of force." *Id.* at 927.

Although *Priester* was decided on obvious-clarity grounds, in denying the officers qualified immunity, we considered the facts pursuant to the excessive-force standard embodied in *Graham v. O'Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989). *Priester*, 208 F.3d at 924. *Graham* dictates that the reasonableness of the force used by law enforcement during the course of an arrest must be measured by the severity of the crime, the danger to the officer, and the risk of flight. *See Graham*, 490 U.S. at 396, 109 S. Ct. at 1865; *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

Applying these factors in *Priester*, we noted that the plaintiff, who was suspected of stealing a mere $20 worth of snacks from a golf shop, "submitted immediately to the police" and complied with officers' instructions to get down on

10

the ground. *Priester*, 208 F.3d at 927. Moreover, the plaintiff "did not pose a threat of bodily harm to the officers or to anyone else" and "was not attempting to flee or to resist arrest." *Id.* Given these "straightforward circumstances," we concluded that "no reasonable officer could believe that this force was permissible." *Id.*

Here, we are confronted with an entirely distinct factual scenario. Unlike the plaintiff in *Priester*, Monell completely failed to obey the officers' repeated commands to stop and made no attempt to cede to the officers' authority. Indeed, he remained totally unresponsive throughout the entire encounter, which occurred over an extended period and at different venues. And, although the complaint alleges that Monell was neither hostile nor belligerent, he single-mindedly continued to approach his open garage over officers' numerous commands that he stop. In light of Monell's lengthy period of noncompliance, his unwavering resolve to enter the garage, and his unusual behavior, officers had no way of knowing Monell's purpose in going into the garage, whether weapons awaited him, or whether Monell intended to enter the house and possibly take hostages. As a result, the potential danger of the situation, particularly when viewed against Monell's unresponsiveness—two material circumstances that did not exist in *Priester*—renders *Priester* uninstructive in this case.

**B.**

11

Nor do the facts of this case fall within the scope of the obvious-clarity exception.  As noted above, in evaluating whether an officer's use of force was excessive and unreasonable, we consider the *Graham* factors.  *Graham*, 490 U.S. at 396, 109 S. Ct. at 1865; *Lee*, 284 F.3d at 1197–98.   Even in the absence of case law, a right can be clearly established—and qualified immunity overcome—if application of these factors would inevitably lead every reasonable officer in the defendant's position to conclude that the force was unlawful.  *See Hoyt v. Cooks*, 672 F.3d 972, 978 (11th Cir. 2012).  In considering these factors, we emphasize that the reasonableness of the force employed must be judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Crenshaw*, 556 F.3d at 1291 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872) (internal quotation marks omitted).  Notably, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S. Ct. at 1872.

Applying the *Graham* factors to the facts at hand, we conclude that Hendershott's use of the police canine to subdue Monell does not so plainly traverse the "hazy border" between unconstitutional and permissible force as to rise to the level of obvious clarity.  While the officers' initial pursuit of Monell was

12

not precipitated by Monell's commission of a serious offense, the facts alleged in the complaint indicate that Monell was altogether uncooperative, and officers reasonably could have believed that Monell posed a significant threat to officer safety and to the safety of others.

Plaintiffs appear to suggest that the absence of any overt aggression by Monell, coupled with the fact that Monell suffers from mental illness, somehow nullified this risk, but the facts do not lend themselves quite so easily to that conclusion. The officers on the scene were faced with an individual who led police on a lengthy pursuit, refused to pull over despite the arrival of multiple police cars with lights flashing and sirens blaring, ignored officers' numerous orders to halt, and attempted to enter an open garage that could have contained weapons and a residence that could have held potential hostages. Particularly when viewed against the background of Monell's extended unresponsive and unusual conduct, we cannot say that it should have been obvious to every reasonable officer that Monell's conduct and the potential danger of the situation did not call for the force used. While we do not opine at this juncture as to whether Hendershott's alleged use of force was unconstitutional, we do not believe that the conduct at issue was so "wholly unnecessary" or "grossly disproportionate" as to blatantly cross the line of constitutionality in the absence of any case law on point. *See Lee*, 284 F.3d at

13

1199.    As a result, as the complaint is currently pled, qualified immunity should not have been denied to Hendershott.

## V.

Because Plaintiffs' Second Amended Complaint fails to allege a clearly established excessive-force violation, the district court's denial of Hendershott's qualified-immunity defense is **REVERSED**.[3]

---

[3] Our opinion does not preclude Plaintiffs from seeking leave to amend their complaint, should they desire to do so, or the district court from granting such relief, should it determine it to be appropriate.