**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-10954

_____

DENISE HUGHES,
    as Administrator of the Estate of Edwin Dewayne Moss,

*Plaintiff-Appellee,*

*versus*

DARIAN K. LOCURE,
    an individual,

*Defendant,*

MONIQUE N. LOCURE,
    Administratrix of the Estate of Darian K. Locure,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:22-cv-00312-RAH-JTA

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

Darian Locure, a sheriff's deputy, drove drunk, struck the car in which Edwin Moss was riding, and fled the scene, leaving Moss to die. We are constrained to assume that Locure was acting under color of state law and in his official capacity when he committed these acts. The question before us is whether Locure is entitled to qualified immunity to a section 1983 claim. Because of our circuit precedent, we cannot say that Locure's conduct was clearly unconstitutional at the time of the violation. So we must reverse the denial of qualified immunity.

## I.

The following facts come from the operative complaint, and we must assume they are correct.

Darian Locure was a Macon County deputy sheriff in Tuskegee, Alabama. One evening, while he was off duty, he came to the sheriff's office to care for his police dog. Sometime during the evening—we don't know when—he got drunk (or otherwise intoxicated). Later that night, still blind drunk, he left the office in his police truck to drive back home.

It was pitch black out. Locure's police truck was pitch black, too. And he had no lights on—neither his emergency lights nor his headlights. Nearly invisible to the naked eye, he sped down a 25-miles-per-hour zone at roughly 70 miles per hour.

At the same time, in the opposing lane of traffic, Edwin Moss was being driven home by Antonio Daniels. Neither Moss nor Daniels could see that someone was barreling down the other lane, so Daniels turned left across it, unknowingly putting his car in front of Locure's. Locure did not slow, stop, or turn away. Instead, he collided into Daniels's car, causing it to flip repeatedly before landing in a ditch. Sometime later, first responders arrived and pronounced Moss dead at the scene.

In the aftermath of the collision, Locure faced criminal and civil liability. An Alabama grand jury indicted him for felony reckless manslaughter. And Denise Hughes, the administratrix of Moss's estate, sued Locure in state court. She brought three state law claims for wrongful death, and one federal claim under section 1983. This appeal is about that last claim.

In her section 1983 claim, Hughes alleged that Locure violated Moss's "substantive due process right to life" under the Fourteenth Amendment by driving "with deliberate indifference to the great risk of harm that would—and did—result to Mr. Moss." Doc. 36 at 15. Because Hughes brought a federal claim, Locure removed the case to the Middle District of Alabama and moved to dismiss the federal claim. In Locure's motion to dismiss, he argued that Hughes failed to plausibly allege that Locure (1) violated Moss's clearly established constitutional rights and (2) acted under color of law. So he argued that he was entitled to qualified immunity and that the section 1983 claim must be dismissed. The district court disagreed and denied Locure's motion to dismiss, concluding that

Locure was not entitled to qualified immunity and that Hughes had plausibly alleged her section 1983 claim.

Locure appealed the district court's qualified immunity denial and its section 1983 color of law determination. Locure died from unrelated causes. Monique Locure, Darian Locure's widow and administratrix of his estate, was substituted as the appellant.

## II.

"We have a threshold obligation to ensure that we have jurisdiction to hear an appeal, for without jurisdiction we cannot proceed at all in any cause." *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023) (citation modified). Though we typically review only final decisions, "the question of whether a complaint states a violation of clearly established law sufficient to overcome a qualified immunity defense does present an abstract issue of law reviewable under 28 U.S.C. § 1291." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1351 (11th Cir. 2024). Thus, we have jurisdiction to determine whether a district court was right to deny qualified immunity. *See Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021).

As an element of a section 1983 claim, the plaintiff must establish that the tortfeasor was acting under color of law. *Charles v. Johnson*, 18 F.4th 686, 694 (11th Cir. 2021) (explaining that "[t]he requirement that the deprivation be made 'under color of state law' . . . is an element of a § 1983 claim that the plaintiff must prove in order to prevail"). We have not explicitly decided whether we can review the district court's determination on that question on an interlocutory basis. *But cf. Est. of Cummings v. Davenport*, 906 F.3d

934, 943–44 (11th Cir. 2018) (explaining that we lack interlocutory jurisdiction to decide whether the "complaint states a claim" under section 1983). But two of our sister circuits have concluded that, when considering interlocutory appeals of denials of qualified immunity, the courts of appeals lack jurisdiction to determine whether a government official was acting under color of law. *See Nelson v. Streeter,* 16 F.3d 145, 149 (7th Cir. 1994); *Sturdivant v. Fine*, 22 F.4th 930, 935 (10th Cir. 2022).

We now join them, largely for reasons they persuasively laid out. The Seventh Circuit reasoned that the color-of-law question has no bearing on the question of immunity: "[i]t does not bear on the defense of immunity. In fact it contradicts it. If the defendants were not acting under color of state law, that is, as officials, they are not entitled to official immunity. Official immunity is for officials." *Nelson*, 16 F.3d at 149. The Tenth Circuit has likewise explained that, in interlocutory appeals like this one, a court of appeals has "jurisdiction only to consider the district court's denial of qualified immunity." *Sturdivant*, 22 F.4th at 935. But "[a]ction under color of state law is an element of § 1983 . . . [a]nd a challenge to the elements of § 1983 does not involve qualified immunity." *Id*.

Both circuits persuade us that we lack jurisdiction to consider whether Locure was acting under color of law. Whether the defendant was acting under color of law is about the applicability of section 1983, not about whether he is entitled to qualified immunity. *Sturdivant*, 22 F.4th at 935–36. The defense of qualified immunity is relevant only if the elements of a section 1983 claim exist.

So, for the purpose of an interlocutory appeal, a defendant takes the color of law issue off the table by asserting qualified immunity. *Nelson*, 16 F.3d at 149.

To be sure, we can exercise pendent jurisdiction over non-appealable decisions that are "inextricably intertwined with" appealable ones. *Hudson v. Hall*, 231 F.3d 1289, 1294 (11th Cir. 2000) (citation modified). But "[i]ssues are not inextricably intertwined . . . when the appealable issue can be resolved without reaching the merits of the nonappealable issues." *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1352 (11th Cir. 2021) (citation modified). Accordingly, because we can decide whether a government official violated clearly established constitutional law without deciding whether he was acting under the color of law under section 1983, we may not exercise pendent jurisdiction over the latter question.

Although we can review the denial of qualified immunity, we cannot review whether Locure acted under color of law. So we must assume for the purposes of the appeal that Locure was acting under color of state law when, apparently off duty, he drunkenly drove his police car home from caring for his dog.

### III.

When a district court denies qualified immunity on a motion to dismiss, "[w]e review the district court's judgment *de novo* to determine whether the complaint alleges a violation of clearly established law, accepting the facts alleged in the complaint as true and

drawing all reasonable inferences in the plaintiff's favor." *Jackson*, 97 F.4th at 1350.

## IV.

We turn now to the merits. To determine whether a government actor is entitled to qualified immunity from a section 1983 claim, "we engage in a burden-shifting analysis." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023). The burden first rests with the government actor, who "must show that he was acting within the scope of his discretionary authority when he committed the challenged acts." *Id.* If the government actor establishes that he acted within his discretionary authority, "the burden shifts" to the complaining party, "who must show that qualified immunity is not appropriate." *Id.* To make that showing, the complainant must establish that: (1) the government actor violated his constitutional or statutory right and (2) the unconstitutionality of that conduct was clearly established at the time of the violation. *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 660 (11th Cir. 2022).

We will walk through these two steps in turn. Accordingly, after we discuss whether Locure was acting within the scope of his discretionary authority, we will then determine whether Locure violated a clearly established constitutional right.

### A.

A government official is not entitled to qualified immunity if he was not "acting within the scope of his discretionary authority when he committed the challenged acts." *Brooks*, 78 F.4th at 1280.

As a result, we would usually begin our analysis by examining whether Locure acted within that scope. But Hughes does not argue on appeal that the district court erred in concluding that Locure acted within his discretionary authority. Accordingly, she has abandoned this argument. *See United States v. Campbell*, 26 F.4th 860, 865 (11th Cir. 2022) (en banc) ("Generally, issues that are not raised in a party's brief on appeal are considered abandoned.").

The district court noted that, despite its assessment, there may be good reason to think that Locure was not acting within his discretionary authority. But we cannot say there are "extraordinary circumstances" that warrant us addressing this issue *sua sponte*. *Id.* at 873. So, for present purposes, we will accept the district court's conclusion that Locure acted within his discretionary authority.

*B.*

We now turn to whether Locure's actions violated a clearly established constitutional right. Here, Hughes argues that Locure violated Moss's substantive due process right to bodily integrity. Whether conduct violates the right to bodily integrity depends on whether that conduct "shocks the conscience." *See Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) ("Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense."); *United States v. Salerno*, 481 U.S. 739, 746 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience' . . . .").

We will assume without deciding that Locure's conduct "shocks the conscience" and violated Moss's right to bodily integrity. *See Pearson v. Callahan*, 555 U.S. 223, 237 (2009). We cannot say, however, that the right was clearly established.

Even if a plaintiff can point to a constitutional violation, the existence of that violation is not enough to defeat qualified immunity. The unconstitutionality of the defendant's particular conduct must have been clearly established at the time of the violation. "[T]he salient question . . . is whether the state of the law" at the time of the violation gave officials "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The notice must be clear to "every reasonable official," and it must place the law "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified).

A plaintiff can show that a right is clearly established for qualified immunity purposes in three ways:

> (1) by pointing to a materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose; (2) by establishing that a broader, clearly established principle should control the novel facts of the case; or (3) by convincing us that the case is one of those rare ones that fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary.

*Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (citation modified). Under methods (2) and (3), we look for "obvious clarity"—"a

principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." *Id.* "In light of the rarity of obvious clarity cases, if a plaintiff cannot show that the law at issue was clearly established under the first . . . method, that usually means qualified immunity is appropriate." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020).

Hughes does not argue that Moss's right was clearly established under methods (1) or (2). Instead, Hughes contends that Moss's right was clearly established under method (3)—obvious clarity. The district court also applied the third method in ruling that Moss's rights were sufficiently clearly established to overcome Locure's qualified immunity defense.

The problem with Hughes's reliance on the third method to clearly establish Moss's right is that our caselaw undermines her conclusion. Our caselaw indicates that Locure's conduct—as egregious as it may be—may not violate a right in the constitutional sense. For example, in *Cannon v. Taylor*, 782 F.2d 947, 950 (11th Cir. 1986), we held "that a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right." Similarly, in *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996), we determined that, even if an officer was grossly negligent in excessively speeding in a non-emergency situation, it still did "not transform a state tort claim into a constitutional deprivation." Several of our

unreported cases—which can be considered "to indicate that a particular constitutional right is not clearly established," *Corbitt v. Vickers*, 929 F.3d 1304, 1319 n.14 (11th Cir. 2019)—have also reached the same conclusion. *See, e.g.*, *Wilcox v. Fenn*, 380 F. App'x 837, 839 (11th Cir. 2010); *Barnwell v. Douglas County*, 390 F. App'x 862, 863–64 (11th Cir. 2010).

Though these situations may be factually distinct, we cannot cast them aside in our "obvious clarity" analysis. Where precedent injects such uncertainty, it does not follow logically that the complained of offense "so obviously violates th[e] [C]onstitution." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Indeed, when caselaw indicates that a certain type of conduct does not rise to the level of a constitutional violation, officials cannot possibly be on notice that the conduct *is* a constitutional violation—and certainly not with obvious clarity. *See Hope*, 536 U.S. at 741; *al-Kidd*, 563 U.S. at 741. The existence of this caselaw casting doubt on the "obvious clarity" of Moss's claimed right—and, indeed, disclaiming such a right altogether—necessarily means that the right was not clearly established at the time of the violation.

To be sure, similar out-of-circuit cases have reached the opposite conclusion. For example, as the district court noted in its order, in *Browder v. City of Albuquerque*, the Tenth Circuit concluded that a police officer's misuse of a squad car resulting in a fatal collision could give rise to a claim under the Fourteenth Amendment. 787 F.3d 1076, 1083 (10th Cir. 2015). But *Browder*, unlike this case, was decided in light of earlier Tenth Circuit precedent, which held

that "a police officer *could* be liable under the Fourteenth Amendment for driving in a manner that exhibits a conscience-shocking deliberate indifference to the lives of those around him." *Id.* (citation modified); *see also Williams v. City & County of Denver*, 99 F.3d 1009 (10th Cir. 1996), *vacated*, 140 F.3d 855 (10th Cir. 1997); *Green v. Post*, 574 F.3d 1294, 1306 (10th Cir. 2009). And in any event, although we allow consideration of "persuasive decisions from other circuits" to determine "whether a violation was one of obvious clarity[,]" *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1263 (11th Cir. 2025) (en banc) (citation modified), we have never said that "such a consensus . . . *alone* [can] constitute clearly established law." *Id.* at 1251 (emphasis added).

Finally, Hughes suggests that conduct that "shocks the conscience" such that it violates substantive due process necessarily equates to an "obviously clear" constitutional violation. We disagree. "Shocks the conscience" is the standard for assessing the egregiousness of the state actor's conduct on the spectrum of potential tort liability. *County of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998) (explaining that the "shocks the conscience" standard "duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."). The "obviously clear" inquiry, by contrast, is about the relationship of the state actor's conduct to the state of constitutional law. *United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action

in question has not previously been held unlawful." (citation modified)). Blending the "shocks the conscience" standard with the "obvious clarity" framework crosses the wires between two distinct concepts. The former concerns tort liability; the latter considers clearly established constitutional law. In other words, conduct may be very bad (and, in fact, shock the conscience), but the state of the law may leave it insufficiently clear that the conduct violates the constitution. In such cases, as here, the defense of qualified immunity applies.

Even though Locure is entitled to qualified immunity, Hughes is not left without an available remedy. *Daniels v. Williams*, 474 U.S. 327, 333 (1986) ("That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests."). Indeed, as she has done, Hughes may pursue state law tort claims against Locure. *See Paul v. Davis*, 424 U.S. 693, 701 (1976); *Davis*, 555 F.3d at 982; *Loftus v. Clark-Moore*, 690 F.3d 1200, 1206 (11th Cir. 2012); *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019). Regardless of the path to obtaining relief, "[i]t is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns." *Daniels*, 474 U.S. at 333. The Constitution sets the boundaries for federal liability, not the outer limits of accountability. Here, Hughes's recourse lies in state tort law, not constitutional doctrine.

14                    Opinion of the Court                    23-10954

## V.

Because any unconstitutionality of Locure's conduct was not clearly established at the time of the alleged violation, we must **REVERSE** the district court's denial of qualified immunity and **REMAND** for further proceedings consistent with this opinion.

23-10954          WILLIAM PRYOR, C.J., Concurring          1

WILLIAM PRYOR, Chief Judge, concurring:

I join the majority opinion in full, which means that I agree that we lack interlocutory jurisdiction to decide whether Locure acted under color of state law. *See* 42 U.S.C. § 1983. I write separately to express skepticism that he did.

Section 1983 punishes constitutional violations only when committed "under color of" state law. *See id.* An officer acts under color of state law when he "exercise[s] power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (citation and internal quotation marks omitted). "[A]cts of officers in the ambit of their personal pursuits are not done under color of law." *Id.* (citation and internal quotation marks omitted).

Although we lack jurisdiction to decide, I doubt that Locure acted under color of law. The complaint against him alleged that he "was not responding to an emergency, nor in pursuit of a suspect, nor carrying out any tasks in the execution of [his law enforcement] duties" when he struck Moss's vehicle. Instead, he was off duty and returning home from the police station. He drove his truck "at or above 70 [miles per hour]" in a 25-miles-per-hour zone "without the use of headlights." And he was "under the influence of alcohol and/or other impairing substance(s)." This conduct was *not* "made possible only because [Locure] [was] clothed with the authority of state law." *Id.* (citation and internal quotation marks omitted). Indeed, drunk driving at excessive speeds violates state

2                    PRYOR, C.J., Concurring                    23-10954

law. Locure's actions were precisely the kind of "personal pursuit[]" that section 1983 does not reach. *Id.* (citation and internal quotation marks omitted).

Justice Scalia often lamented that too many Americans "have come to believe that anything they care deeply about has to be in the Constitution." *See, e.g.*, Antonin G. Scalia, *1994 William O. Douglas Lecture Series Transcript*, 51 GONZ. L. REV. 583, 584 (2016). That is, they assume that "[i]f it's really bad, it has to be unconstitutional," a violation of so-called "substantive due process." *Id.* Some lawyers, and perhaps judges, similarly believe that anything unlawful done by a state official must be actionable under section 1983. But neither assumption is correct.

"Our Constitution . . . does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). And section 1983 "does not federalize all torts . . . committed by a person who is a law enforcement officer." *Myers*, 713 F.3d at 1329 (citation and internal quotation marks omitted). Locure's alleged conduct certainly "deserves condemnation, but his potential liability should be determined, if at all, by state tort law." *Id.*

23-10954   JORDAN, J., Concurring in Part and Dissenting in Part   1

JORDAN, Circuit Judge, Concurring in Part and Dissenting in Part:

I agree that we cannot decide the "color of law" question in this interlocutory appeal, and join Parts I-IV.A of the majority opinion. But I would affirm the district court's denial of qualified immunity to Officer Locure, and therefore respectfully dissent as to Parts IV.B and V.

**I**

A substantive due process violation occurs when an officer's conduct "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). "[H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under [42 U.S.C.] § 1983." *Id.* at 854.

Although "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level," that which is deliberately indifferent to a great or near-certain risk of serious injury can sometimes suffice. *See id.* at 849. *See also Rosales-Mireles v. United States*, 585 U.S. 129, 138 (2018) ("This Court has said that the 'shock the conscience' standard is satisfied where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference.") (quoting *Lewis*, 523 U.S. at 849–50).

The majority assumes, without deciding, that Officer Locure violated Mr. Moss' substantive due process rights. In my view, the allegations in the complaint state a plausible substantive

2  JORDAN, J., Concurring in Part and Dissenting in Part  23-10954

due process claim.  *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-60 (2007) (setting out the plausibility pleading standard).

On the evening of January 19, 2021, Officer Locure drove his dark-colored police vehicle through downtown Tuskegee at 70 miles per hour in a 25-mph zone.  He did this while intoxicated, in violation of Alabama criminal law, *see* Ala. Code § 32-5A-191(a), (e), and without headlights, running lights, or any other lights.  Tragically, he crashed into another car, killing Mr. Moss.  An Alabama grand jury later indicted him for felony reckless manslaughter.

According to the complaint, Officer Locure was not making a split-second decision, pursuing a suspect, responding to a call, dealing with an emergency, providing backup, or assisting a fellow officer.  There were, in other words, no work-related reasons for his inebriated joyride—this was "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Lewis*, 523 U.S. at 846.

Given these allegations, "this case does not seem . . . to implicate any serious borderline disputes." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1080 (10th Cir. 2015) (Gorsuch, J.).  Like the Tenth Circuit in *Browder*—a case which involved less egregious facts—I would hold that Officer Locure's conduct violated the substantive due process rights of Mr. Moss.  *See id.* ("[The officer] used his official squad car and activated its emergency lights and proceeded to speed through surface city streets at more than 60 miles per hour over 8.8 miles through eleven city intersections and at

23-10954   JORDAN, J., Concurring in Part and Dissenting in Part   3

least one red light—all for his personal pleasure, on no governmental business of any kind.").

Simply stated, Officer Locure acted with a "conscious contempt of the lives of others and thus a form of reckless indifference to a fundamental right—precisely the sort of mens rea *Lewis* says will normally suffice to establish liability." *Id*. at 1081.   His conduct, in other words, was conscience-shocking.

> As the Tenth Circuit explained in *Browder*, it is not
>
> appropriate to demand specific intent in these circumstances.  *Lewis* held specific intent may be required to suggest arbitrary or conscience-shocking behavior in cases where the officer has been asked to respond to emergencies of citizens in need.  But the case never suggested that such a demanding form of mens rea is necessary or appropriate to suggest arbitrary or conscience-shocking conduct in cases where the officer isn't pursuing any emergency or any official business at all.  And for good reason.  The officer in these circumstances faces no tug between duties owed to two sets of innocents, there is no emergency, no one has called for his aid, and he sits instead in the same place as everyone else when it comes to respecting the rights of others.

*Id*.  This rationale has even more force here, as Officer Locure was driving while intoxicated. [1]

---

[1] The conduct alleged here is no different, constitutionally, from that of an officer who on New Year's Eve fires his weapon into the night sky to celebrate

4 JORDAN, J., Concurring in Part and Dissenting in Part 23-10954

## II

I would also deny Officer Locure qualified immunity at this stage of the litigation. For me, on the facts alleged, the substantive due process violation was one of "obvious clarity," *i.e.*, the conduct was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc) (internal quotation marks and citation omitted).

No reasonable officer in January of 2021 could have possibly believed that it was appropriate or constitutional to behave as Officer Locure did. And no reasonable officer could have been confused on the matter. By driving in the evening while intoxicated, without any lights, and 45 miles per hour over the speed limit on a local road, Officer Locure played Russian Roulette with the unwitting residents of Tuskegee, turning his police vehicle into a deadly weapon.

The majority believes otherwise, and points to a couple of our prior cases to support its grant of qualified immunity to Officer Locure. But those cases are so materially different that they could not have caused any doubt in the mind of a reasonable officer.

In *Cannon v. Taylor*, 782 F.2d 947 (11th Cir. 1986), a police officer crashed into and killed a motorist as he was responding to a disturbance call. The officer was going 46 miles per hour in a 30-

---

the occasion, with a festive crowd nearby, only to have a bullet strike one of the revelers on its way down to earth.

23-10954   JORDAN, J., Concurring in Part and Dissenting in Part   5

mph zone, "[a]pparently concerned for the safety of the first officer to reach the scene." *Id.* at 948. We held that "a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no [42 U.S.C. §] 1983 cause of action for violation of a federal right." *Id.* at 950. Our holding in *Cannon* was later vindicated by the Supreme Court in *Lewis*, 523 U.S. at 853 ("[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the [requisite] shock[.]").

Officer Locure, unlike the officer in *Cannon*, was not responding to anything "in the line of duty." So *Cannon*, to my mind, is not very instructive on the matter of qualified immunity.

The circumstances in *Rooney v. Watson*, 101 F.3d 1378 (11th Cir. 1996), were also significantly different than those here. In *Rooney*, the police officer was driving 73 miles per hour on a highway when he was involved in a crash. Although he was on duty, the officer was not responding to an emergency call at the time of the accident, and he did not have his lights or siren on. *See id.* at 1379. We concluded that even if "driving at a high rate of speed in a non-emergency . . . situation reveal[ed] gross negligence rather than negligence," that fact *alone* did "not transform a state tort claim into a constitutional deprivation[.]" *Id.* at 1381.

Had Officer Locure only been speeding without emergency lights in a non-emergency situation, he likely would be entitled to qualified immunity. On the facts alleged, however, speeding and

6 JORDAN, J., Concurring in Part and Dissenting in Part 23-10954

driving without lights were not his only transgressions. He was also intoxicated—and that is the critical aggravating factor.

"[S]ome things are so obviously unlawful that they don't require detailed explanation," *Browder*, 787 F.3d at 1082, and so it is here. Every adult, and certainly every police officer, knows that driving under the influence is both unlawful and extremely dangerous. "[I]t would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Id.* at 1082–83. *See also Grendell v. Gillway*, 974 F. Supp. 46, 52 (D. Me. 1997) ("Simply because there is no clearly defined case law condemning certain conduct does not mean police officers should be free to engage in such conduct, no matter how offensive or destructive to a fair and just society that conduct may be, and then hide behind the shield of qualified immunity.").

### III

Qualified immunity, the Supreme Court has told us, protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted). A police officer who drives while intoxicated, in the evening without any lights, and reaches 70 miles per hour in a 25-mph zone, is plainly incompetent in the constitutional sense and does not deserve the "benefit of the doubt" that qualified immunity provides. *See Crosby v. Paulk*, 187 F.3d 1339, 1344 (11th Cir. 1999) (internal quotation marks and cita-

23-10954   JORDAN, J., Concurring in Part and Dissenting in Part   7

tion omitted).  This is not, in other words, a scenario where an officer needs "breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

No court has granted qualified immunity on facts like those alleged here.  I do not think we should be the first.[2]

---

[2] I have elsewhere been critical of the Supreme Court's current qualified immunity jurisprudence, but I won't repeat those views here.  *See, e.g.*, *Sosa v. Martin Cnty., Fla.*, 57 F.4th 1297, 1304 (11th Cir. 2023) (en banc) (Jordan, J., concurring in the judgment); *Stalley v. Cumbie*, 124 F.4th 1273, 1322 n.7 (11th Cir. 2024) (Jordan, J., dissenting).  Even under the doctrine as it exists today, I do not believe Officer Locure is entitled to qualified immunity.