[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11958

_____

D.C. Docket No. 0:20-cv-60772-AHS

JEFFERY R. BELL,

Plaintiff-Appellant,

versus

SHERIFF OF BROWARD COUNTY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 2, 2021)

Before JORDAN, BRASHER, and ANDERSON, Circuit Judges.

JORDAN, Circuit Judge:

Deputy Jeffery Bell sued his employer, the Sheriff of Broward County, under

42 U.S.C. § 1983 for declaratory and injunctive relief.  He alleged that the Sheriff

retaliated against him for exercising his First Amendment rights by suspending him with pay pending an investigation into his conduct.

The district court dismissed the suit under Rule 12(b)(6) because Deputy Bell had failed to allege that he suffered an adverse employment action. Following oral argument and a review of the record, we affirm.

As explained below, Deputy Bell sued the Sheriff only five days after he was suspended with pay in accordance with the governing collective bargaining agreement. We agree with the district court that a five-day suspension with pay does not constitute adverse action for purposes of a First Amendment retaliation claim.

**I**

As this case comes to us from a Rule 12(b)(6) dismissal, we accept the factual allegations of Deputy Bell's complaint as true. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019). The complaint tells the following story.

On April 6, 2020, Deputy Bell wrote an opinion piece in the *South Florida Sun Sentinel*. At that time, he worked for the Broward County Sheriff's Office (he had been with the BSO for over 20 years) and served as the elected president of the International Union of Police Associations Local 6020 (the union which represents member deputies and sergeants employed by the BSO).

The collective bargaining agreement between the Sheriff and Local 6020 recognized that Deputy Bell held a "full release position" at the BSO. This meant

that Deputy Bell was "released" from his traditional law enforcement duties so that he could serve as Local 6020's full-time president. In his capacity as president of Local 6020, Deputy Bell spoke with union members about their concerns, handled membership requests, sent communications to members, hired legal counsel for members, processed grievances regarding alleged unfair labor practices, represented members at disciplinary hearings, worked on membership benefits, and acted as the public voice of the union.

In his *Sun Sentinel* opinion piece, Deputy Bell—writing in his capacity as the president of Local 6020—criticized the Sheriff for his response to the COVID-19 pandemic. For example, he complained that the Sheriff had failed to provide a sufficient supply of personal protective equipment to BSO employees. He also maintained that the Sheriff was unprepared for the pandemic and that his public statements to the contrary were false.

Four days later, on April 10, 2020, Deputy Bell drafted a "whistleblower" letter pursuant to Fla. Stat. § 112.3187(6) and sent it to the Sheriff by email. He did this in an effort to curtail threats made by the Sheriff against him and to obtain a face-to-face meeting with the Sheriff about the issues relating to personal protective equipment.

On the same day, the Sheriff suspended Deputy Bell with pay. The Sheriff asserted that Deputy Bell had made false statements and engaged in "conduct

3

unbecoming" a BSO employee.  BSO Internal Affairs advised Deputy Bell that he was the subject of an investigation due to his possible violation of certain BSO policies, included those related to truthfulness, corrupt practices, and conduct unbecoming an employee.

The suspension, according to the BSO, required Deputy Bell to lose his "full release position." It also prevented him from acting as a law enforcement officer, even when off-duty, and required him to report to Internal Affairs daily.

Invoking 42 U.S.C. § 1983, Deputy Bell sued the Sheriff in his official capacity on April 15, 2020, five days following his suspension with pay.  He alleged that the Sheriff had retaliated against him in violation of his First Amendment rights. He sought a declaratory judgment that the suspension violated the Constitution, and an injunction setting aside the suspension, but no damages.  The Sheriff moved to dismiss the complaint under Rule 12(b)(6).

Taking the facts in the complaint as true, and viewing them in the light most favorable to Deputy Bell, the district court ruled that he had spoken as a citizen, and not as a BSO employee, in his *Sun Sentinel* opinion piece.  *See* D.E. 22 at 5-6.  It also concluded that Deputy Bell had spoken about a matter of public concern—the allegedly inadequate supplies of personal protective equipment provided to BSO employees—and that his First Amendment interests outweighed those of the Sheriff

under the balancing test established in cases like *Pickering v. Bd. of Educ. of Township High School Dist.*, 391 U.S. 563, 568-69 (1968). *See* D.E. 22 at 7-9.

The district court nevertheless dismissed the First Amendment retaliation claim because Deputy Bell had not alleged an adverse employment action. First, nothing in the collective bargaining agreement required the president of Local 6020 to be on "full release" status with the BSO, and Deputy Bell's removal from a "full release position" had no bearing on his position as union president. *See id.* at 8-9. Second, Deputy Bell had not offered any allegations of a negative employment consequence. The suspension was with pay, and caselaw indicated that such a suspension, without more, does not constitute an adverse employment action. *See id.* at 10-11. As a result, Deputy Bell had not alleged, and could not "at this time" allege, an adverse employment action. *See id.* at 11.

## II

As noted, the district court dismissed the complaint under Rule 12(b)(6) due to Deputy Bell's failure to allege an adverse employment action. Our review of the dismissal order is plenary. *See Lane v. Philbin*, 835 F.3d 1302, 1305 (11th Cir. 2016).

## III

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected

5

speech." *Nieves v. Barlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and citation omitted). Because this case is here on a Rule 12(b)(6) dismissal, the question is whether Deputy Bell plausibly alleged that the Sheriff took adverse action against him. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-67 (2007).[1]

## A

Our caselaw on the adverse action of a First Amendment retaliation claim brought by a public employee is a bit muddled. We therefore discuss our precedents before addressing Deputy Bell's situation.

In 2004, we held that a "public employer retaliates [in violation of the First Amendment] when [it] takes an adverse employment action that is likely to chill the exercise of constitutionally protected speech." *Stavropoulos v. Firestone*, 361 F.3d 610, 618 (11th Cir. 2004), *abrogated as to Title VII standard by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). An "adverse employment action," we explained in *Stavropoulos*, is an action that "involve[s] an important condition of employment," and we listed as examples "discharges, demotions, refusals to hire or promote, and reprimands." *Id.* at 619. *See also Akins v. Fulton Cnty.*, 420 F.3d 1293, 1300-02 (11th Cir. 2005) (applying *Stavropoulos* and holding

---

[1] For the first time on appeal, Deputy Bell claims that the Sheriff's actions also constituted a prior restraint on his speech. He did not, however, raise this theory in his complaint, his motion for a preliminary injunction, or his opposition to the Sheriff's motion to dismiss. We therefore will not consider it for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

that constructive discharge is an adverse employment action but that reprimands, negative evaluations, threats of job loss and suspensions without pay, exclusions from meetings, and removal of job duties—even in the aggregate—are not).

A year later, in 2005, we addressed the adverse action standard for First Amendment retaliation claims brought by private citizens. Adopting the view of the majority of the circuits, we held that the standard is an objective one: "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (internal quotation marks and citation omitted). In so doing, we distinguished *Stavropoulos*: "The defendants' reliance on retaliation cases in the public employment context is misplaced, because different interests are at stake there. In the employment context, the required adverse action is 'adverse employment action.' Plainly, private citizens cannot suffer adverse employment actions at the hands of public officials who are not their employers." *Id.* at 1252 (quoting *Stavropoulos*, 361 F.3d at 616). *See also Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (applying *Bennett* to the First Amendment retaliation claim of a prisoner).

So far, so good. But in a 2016 case involving the First Amendment retaliation claim of a police officer, we applied *Bennett* without mentioning *Stavropoulos*. *See Bailey v. Wheeler*, 843 F.3d 473, 477, 480-81 (11th Cir. 2016). Deputy Bell does

not rely on *Bennett* or *Wheeler* by name, but he asks us to apply the adverse action standard enunciated in those decisions and in *Burlington Northern*, 548 U.S. at 68, a Title VII retaliation case. If we saw no way out of the precedential conundrum, we would have to apply *Stavropoulos* as the earlier decision, *see Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1231 (11th Cir. 2020), unless we concluded that it has been abrogated by *Burlington Northern*. Because Deputy Bell loses under both the *Stavropoulos* and *Bennett* standards, we do not need to confront the question of what prior decision to apply, and mention the potential intra-circuit conflict to flag the matter for litigants, attorneys, and future panels.[2]

---

[2] This may be a good time to point out that *Stavropoulos* may be ripe for re-examination. *Stavropoulos* explained that the Title VII and First Amendment adverse action standards "are consonant." *Stavropoulos*, 316 F.3d at 619. Two years after we decided *Stavropoulos*, the Supreme Court held that under Title VII's anti-retaliation provision the adverse action requirement is satisfied if the challenged action "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68. We have since ruled that "the standard applicable to all Title VII retaliation claims is the *Burlington Northern* 'might well have dissuaded' standard[.]" *Monaghan v. Worldpay, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020).

If the adverse action standard has changed in Title VII retaliation cases, it might be time to re-evaluate *Stavropoulos* with respect to public employees alleging retaliation in violation of the First Amendment. In such cases some of our sister circuits employ a standard that is similar, if not identical, to that announced in *Bennett* and *Burlington Northern*. *See, e.g.*, *Alter v. Spiegel*, 988 F.3d 564, 575 (1st Cir. 2021); *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006); *Coszalter v. City of Salem*, 320 F.3d 968, 975-76 (9th Cir. 2003); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). *Cf. DePree v. Saunders*, 588 F.3d 282, 287-88 (5th Cir. 2009) (noting that the Fifth Circuit has not decided the effect, if any, of *Burlington Northern* on the First Amendment retaliation claims of public employees).

**B**

In his initial brief, Deputy Bell argued that the five-day suspension with pay "precluded" him from carrying out his duties as president of Local 6020, and that the district court erred by not considering that effect in analyzing the adverse action requirement. *See* Appellant's Br. at 12. In his reply brief, however, he agrees with the Sheriff that his role as union president remains intact and he no longer claims an adverse action in that respect. *See* Appellant's Reply Br. at 1-2. *See also* Appellant's Suggestion of Mootness at 1 ("[T]he Sheriff's response has mooted the relief requested in the complaint, by clarifying the terms of [Deputy] Bell's suspension and his right to speak freely as a citizen on matters of public concern.").[3]

As a result, we need only consider whether the suspension with pay from law-enforcement activities constituted an adverse action. Like the district court, our answer is no.

The Fifth Circuit, which applies an adverse employment action standard that is consistent with *Stavropoulos,* has held that a public employee's suspension with pay pending an investigation does not constitute adverse employment action for purposes of a First Amendment retaliation claim. *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000). The Sixth Circuit, though applying the *Bennett*

---

[3] We declined to find the appeal moot because Deputy Bell's complaint sought an injunction reversing the suspension in all respects.

standard in the public employee context, has come to the same conclusion. *See Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019). The Ninth Circuit, also applying the *Bennett* standard, has ruled that placing a public employee on administrative leave with pay can, "under some circumstances," constitute adverse action in a First Amendment retaliation claim. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1078-79 (9th Cir. 2013) (en banc) (holding that placement on administrative leave was an adverse action because the police officer was not allowed to take a sergeant's exam, forfeited holiday pay, and lost investigative experience).

We need not issue a broad ruling about whether a public employee's suspension with pay always constitutes or never constitutes an adverse action for purposes of a First Amendment retaliation claim. Deciding the case narrowly on the complaint before us, we hold only that Deputy Bell's five-day suspension with pay pending an investigation into his conduct is not an adverse action. We come to this conclusion under both the *Stavroupoulos* and *Bennett* formulations of the adversity standard. Although the two formulations of adversity are qualitatively different, they nevertheless share a common element: both ask whether the challenged conduct would, objectively, chill or deter the exercise of constitutionally protected speech. *See Stavropoulos*, 361 F.3d at 619; *Bennett*, 423 F.3d at 1250.

Deputy Bell's suspension with pay was less than a week old when suit was filed, and we do not think that such a temporally-limited suspension pending an

investigation into alleged misconduct would deter a reasonable person from exercising his First Amendment rights. Indeed, the suspension was authorized by the collective bargaining agreement between Local 6020 and the BSO, which incorporated the Sheriff's Policy and Procedures Manual and Florida's Law Enforcement Officers' Bill of Rights, Fla. Stat. § 112.351 et seq. *See* D.E. 1-7, Art. 32.1.; Appellant's Suggestion of Mootness, Exh. A. at § 9.5.6.[4]

### III

We affirm the district court's dismissal of Deputy Bell's complaint.

**AFFIRMED.**

---

[4] At oral argument, the parties informed us that Deputy Bell was still suspended with pay, and that the Internal Affairs investigation was ongoing. We express no view on whether the current state of affairs can provide the basis for the adverse action element of a First Amendment retaliation claim.